IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM J. MYATT                                                                                      PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:10-cv-701-CWR-FKB

SUN LIFE ASSURANCE COMPANY                                                                DEFENDANTS
(U.S.) and JOHN DOE

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Sun Life Assurance Company of Canada (U.S.) ("Sun Life")'s Motion for Summary Judgment Or In The Alternative, For Partial Summary Judgment, Docket No. 40, its supporting brief, Docket No. 41, and its reply brief, Docket No. 44. Plaintiff William J. Myatt ("Myatt"), has filed his response, Docket No. 43, and the matter is ready for review. The motion is GRANTED IN PART and DENIED IN PART.

**I. Factual and Procedural History**

Myatt, a citizen of Mississippi, purchased a non-qualified Sun Life Annuity Contract on December 30, 1998, by making an initial payment of $65,000.00 through the Stifel Nicolaus brokerage company. The contract offered both market value and a death benefit. After holding the contract for almost a decade, Myatt decided to partially liquidate the annuity and use the proceeds to purchase another annuity from Pacific Life, a different company.

On November 28, 2007, Myatt's brokerage agent, Rankin Revel Rawlings ("Rawlings"), contacted Sun Life to ask about the market and death values of Myatt's Annuity Contract. During that conversation Devin Briltz, Sun Life's representative, advised Rawlings that a partial withdrawal would partially reduce the death benefit,[1] but "if the contract value [] drop[ped] to

---

[1] A transcript of that conversation has been entered into the record. Docket No. 40-7. In relevant part, it provides:
　　　　Rawlings:　　　Now when Mr. Myatt takes out withdrawals is it pro rata
　　　　Briltz:　　　　Actually, no in this case it is dollar for dollar

zero, the death benefit would be lost."[2] During that same conversation, Briltz told Rawlings that he would forward the appropriate form so that Myatt could make a partial withdrawal.[3] Sun Life alleges that Rawlings was sent a copy of its "Variable Annuity Withdrawal Request" form that same day, pursuant to his conversation with its representative. According to Sun Life, Rawlings made "no inquiry concerning" his desire to complete a partial withdrawal by any other means. Docket No. 42, at 4.

On December 12, 2007, Myatt executed a form, "Partial Annuity Exchange/Liquidation and Transfer to Annuity Acknowledgment Letter," which directed his broker to partially

---

[2]
| | | |
|---|---|---|
| Rawlings: | Let me make sure I understand that, um, if | |
| Briltz: | If he took out $100,000, his death benefit would drop by $100,000 | |
| Rawlings: | If he takes out $223,000 | |
| Briltz: | His death benefit would drop by $223,000 | |
| Rawlings: | So he could in essence leave $2,000 in there and keep $106,000 of death benefits | |
| Briltz: | That's correct, yes | |

*Id.* at 2 (captions added).

[3]
| | | |
|---|---|---|
| Rawlings: | What is the minimum amount that he'd have to leave in here to keep that death benefit in tact | |
| Briltz: | There is no set dollar amount, one thing to keep in mind is when we do lower the contract values this is a futurity one contract, so once that gets below $75,000 there going to be a year fee of $30 on the contract | |
| Rawlings: | OK | |
| Briltz: | And again if he's staying in the variable funds, there would be market fluctuations if the contract value does drop to zero, the death benefit would be lost | |

Docket No. 40-7, at 3 (captions added).

| | |
|---|---|
| Rawlings: | OK, well ah, I appreciate, what does he have to do, you need to email me a withdrawal form |
| Briltz: | That's fine, I can email it to you to let you know it's also on our website or we can fax it if those are any easier for you. |
| Rawlings: | Ah, |
| Rawlings: | So email's the best, so that's great |
| Rawlings: | It works great, cuz I can forward that email right on to Mr. Myatt if he wants to do this. |
| Briltz: | Sounds good Revel, what's the email address please |
| Rawlings: | It's [redacted]. |
| Briltz: | [redacted], I'm going to send that right away and you will receive it |

Docket No. 40-7, at 5 (captions added).

2

liquidate his Sun Life annuity. That same day, Myatt authorized his broker to transfer 99% of the funds from his Sun Life annuity toward the purchase of a Pacific Life annuity. This partial transfer would have left a death benefit of approximately $104,414.29 remaining in Myatt's Sun Life annuity.

On December 18, 2007, Pacific Life mailed appropriate forms to Sun Life, including a 1035 Exchange Form requesting the transfer of 99% of Myatt's Sun Life Annuity Contract to Pacific Life. The next day, Sun Life processed the request as a full 1035 Exchange—instead of a partial one—effectively eliminating the Annuity Contract's death benefit and creating the present controversy. Myatt alleges that he did not discover the erroneous transfer until January 2009, more than a year later. Sun Life alleges that it sent Myatt several notices during the intervening period, which should have alerted him that his account had been fully liquidated.

In November 2010, Myatt filed suit in Mississippi state court, seeking to hold Sun Life liable for breach of contract, negligent misrepresentation, and punitive damages.[4] Sun Life, a Massachusetts corporation with its principal place of business in Boston, invoked diversity jurisdiction and removed the action to this Court.

Sun Life now claims that it is entitled to summary judgment under the affirmative defenses of ratification and/or waiver. Alternatively, Sun Life argues that it is entitled to partial summary judgment on Myatt's claim of negligent misrepresentation, and on his request for extra-contractual damages (attorneys fees and interest) and punitive damages. Myatt opposes the motion. This Court has personal and subject matter jurisdiction and is prepared to rule.

## II. Standard of Review

---

[4] Myatt has also filed a negligence claim against co-defendant John Doe. Myatt alleges that Doe negligently failed to process his partial 1035 Exchange. Docket No. 1-1, ¶ 12.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be, or is genuinely disputed, must support the assertion by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. Law and Analysis

**A.     Sun Life's Affirmative Defenses**

Sun Life contends that summary judgment is warranted under the affirmative defense of ratification, or alternatively, under the affirmative defense of waiver.

*1.     Ratification*

Under Mississippi law, "[r]atification may be established through affirmative acts or inaction." *Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert*, 991 So. 2d 1209, 1212 (Miss. 2008). Thus, Sun Life can establish its affirmative defense if it shows that Myatt either (a) "*manifest*[ed] *assent*" to the error or (b) engaged in "conduct that justifies a *reasonable assumption*" that he consented to the error. *Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (citations omitted). Sun Life's claim falls under the second prong of the ratification test; it argues that Myatt's failure "to take any action to notify Sun Life or have the transaction reversed" justifies an assumption that Myatt consented to the error. The issue in this case is whether Myatt's failure to respond does, in fact, justify a "reasonable assumption" that he consented to Sun Life's error.

Mississippi law establishes two factual prerequisites to finding that a principal ratified by inaction. First, the factfinder should have evidence that "the principal has notice that others will infer from his silence that he intends to manifest his assent." *Id.* Second, the factfinder should have evidence that the principal acted with "full information" or in deliberate disregard of the information available to him. *Green Acres Farms, Inc. v. Brantley*, 651 So. 2d 525, 528-29 (Miss. 1995). A principal's mere carelessness or simple neglect is generally not enough to support a finding that he deliberately disregarded the information available to him. *See id.* at 530 ("the principal's want of such knowledge, even if it arises from his own carelessness in inquiring or neglect in ascertaining facts, or from other causes, will render such ratification invalid") (citations omitted).

Sun Life bears the burden of proving each of the factual considerations that are relevant to its ratification defense. *See BankPlus*, 60 So. 3d at 797 ("Ratification does not arise by operation of law."). It proffers several items as evidence that Myatt had notice that his failure to respond would effectively terminate his account; and that Myatt had full information, or deliberately disregarded the information available to him, such that he voluntarily assumed the effects of Sun Life's error.

First, Sun Life offers a "Confirmation Statement," indicating that the value of Myatt's account was zero as of December 20, 2007. Docket No. 40-12. The Confirmation Statement contained these instructions: "PLEASE REVIEW THIS STATEMENT CAREFULLY. DISCREPANCIES REPORTED WITHIN 60 DAYS WILL BE ADJUSTED." *Id.* at 2. Second, Sun Life offers a "Sun Life Year End Statement" dated December 31, 2007; it also indicated that Myatt's account balance was zero. Docket No. 40-14, at 1. The document provided instructions

similar to those appearing in the Confirmation Statement, directing Sun Life customers to give notice of error within 60 days. *Id.* at 2.

In further support, Sun Life offers communications between Pacific Life, Stifel Nicolaus, and Myatt. Myatt's contract with Pacific Life indicates that he purchased his Pacific Life annuity at a price that matched the amount withdrawn from his Sun Life annuity. Docket No. 40-10, at 3. A Pacific Life quarterly statement, dated December 31, 2007, indicates that total payments into Myatt's Pacific Life account matched the amount withdrawn from the Sun Life annuity. Docket No. 40-15.

Finally, Sun Life offers monthly statements from Myatt's broker summarizing his investments and annuities. The November 31, 2007, statement lists a Sun Life annuity (Contract No. 1700012377) valued at $231,750.87, but the December 31, 2007, statement does not list a Sun Life Annuity associated with that contract number. Docket Nos. 18-19. The December statement does, however, list a Pacific Life annuity valued at $227,959.65. Docket No. 19.

Sun Life argues that it has satisfied the notice requirement because "[t]he Confirmation Statement and Year End Statement constituted notice to [Myatt] that his Annuity Contract had been fully liquidated and closed." Docket No. 41, at 18. Myatt contends that he did not ratify the error, and avers that it was his understanding that the transfer, as authorized, would have kept his account open and also left his death benefit intact. Docket No. 40-4, at 120-21.

Having considered the evidence presented against the legal effects of Myatt's inaction, the Court finds that a genuine dispute of material fact exists on the notice prong of Sun Life's ratification defense. Sun Life relies on documents which, themselves, give no indication that Myatt's failure to act would have the specific effect of closing his annuity account or canceling the associated death benefit. Based on the documents' plain language, a trier of fact could

reasonably infer that they alerted Myatt to nothing more than the balance of his account as recorded by Sun Life on the date specified, and the actions that he would have needed to take if he disputed that balance. Accordingly, this issue should go to trial.

Sun Life has also failed to show that Myatt acted with full information, or in deliberate disregard thereof. It argues that Myatt ratified with full knowledge because he "fail[ed] to take action within the time period allowed [60 days] and [because he] accept[ed] . . . transfer of funds to Pacific Life." Docket No. 41, at 15. In support of its argument, Sun Life cites *Brantley*, 651 So. 2d at 525. In that case, the plaintiffs (chicken farmers) contracted with the defendant to receive three flocks of chickens. *Id.* at 525. After the contract was formed, the defendant's lawyer sent a letter to the plaintiffs that modified the terms of their agreement. *Id.* at 526. The letter specified: "should [] (Mr. Brantley) fall below [] fifty percent (50%) [delivery] on the first flock, no new flocks will be provided." *Id.* Plaintiffs sued after the defendant failed to deliver the second and third flocks because their flock fell below the percentage specified in the modification. The defendants were granted their ratification defense because the plaintiffs took no action to disavow the letter or, knowing that the defendants had relied on the letter, to reject its modification of their agreement. *Id.* at 530.

Myatt's case is distinguishable from *Brantley*. The document ratified in *Brantley* gave the principal express notice of the terms to be ratified and how those terms would affect the principal's legal rights; it expressly stated that the agreement would be subject to a particular condition, and that failure to satisfy the condition voided a future interest in any additional benefits under the contract. Unlike *Brantley*, Myatt's claim requires assessment of his understanding of a company policy that was not expressly stated in the documents that he received.

Accordingly, there is a genuine dispute of material fact regarding whether Myatt knew that his failure to act would implicate his right to retain his annuity with Sun Life and its associated death benefit. The trier of fact can resolve whether Myatt's contract was fully informative, as Sun Life contends, Docket No. 40-6, at 48-70, or whether Myatt's contract was not fully informative because it did not express Sun Life's policy prohibiting partial 1035 exchanges, as Myatt argues, Docket No. 43, at 7. Therefore, summary judgment on the second prong of Sun Life's ratification defense is denied.

*2.     Waiver*

"Waiver is the voluntary relinquishment of a known right . . . . [and] typically must be proved by clear and convincing evidence." *Moorman v. Tower Mgmt. Co.*, 451 F. Supp. 2d 846, 853 (S.D. Miss. 2006) (citing *Wilson v. General Motors Acceptance Corp.*, 883 So. 2d 56, 68 (Miss. 2004), *Swift v. Aberdeen Lumber Co.*, 159 So. 301, 305 (Miss.1935)). The Court incorporates the ratification analysis into its analysis of the defendant's waiver defense, as do the parties,[5] and finds that there are genuine disputes of material fact on the question of whether Myatt 'voluntarily' gave up a right known to him by failing to respond to Sun Life's errors.

Separately, Sun Life contends that "Myatt's careless disregard of the statements and disclosures received from Sun Life, as well as those received from Pacific Life and Stifel Nicolaus concerning the transaction, constitute a waiver of his right to sue for the alleged improper liquidation of the Annuity Contract." Docket No. 41, at 18.

Myatt's receipt of documents from Sun Life and Pacific Life is relevant to this determination. *See, e.g.*, *King Lumber Indus. v. Cain*, 209 So. 2d 844, 848 (Miss 1968) ("A person having within his knowledge facts which would put him on inquiry as to his personal

---

[5] *See, e.g.*, *O'Hare v. Graham*, 455 F. App'x 377, 381 n.1 (5th Cir. 2011) ("[Appellants] group ratification and waiver together. We will do the same.").

rights should be charged with notice of such information such facts and the exercise of ordinary diligence would disclose."). Also relevant is the evidence suggesting that Myatt's contract did not disclose Sun Life's policy prohibiting partial 1035 exchanges, and that Sun Life's acceptance of Myatt's request for a partial 1035 exchange plainly violated that policy. Based on the documentary evidence and testimony, a trier of fact could infer that Myatt's actions were consistent with those of a customer who was not fully informed of Sun Life's policies. Accordingly, summary judgment is denied because a genuine dispute of material fact exists with respect to the waiver defense.

### B. Negligent Misrepresentation

A plaintiff who claims negligent misrepresentation must prove five elements:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Mladineo v. Schmidt*, 52 So. 3d 1154, 1164-65 (Miss. 2010).

Myatt previously advanced a theory of affirmative misrepresentation, but he now appears to have abandoned that argument. In his complaint, Myatt alleged that the negligent misrepresentation occurred when "Sun Life's agents and/or employees represented that Myatt could liquidate 99% of his Sun Life Annuity Contract." Docket No. 1-1, ¶ 10. But at summary judgment, Myatt advances a theory of misrepresentation by omission. He now alleges that "Sun Life's contract contains a misrepresentation of fact" because the contract "does not contain any prohibition against a partial 1035 tax free exchange." Docket No. 43, at 8. Therefore, having changed his theory of how the misrepresentation occurred, Myatt has failed to identify a genuine

9

dispute of material fact with respect to two of the elements of his negligent misrepresentation claim.

Myatt has failed to identify a genuine dispute of material fact regarding the fourth element of his negligent misrepresentation claim. Consistent with the fact that Myatt now argues a theory of misrepresentation by omission, rather than an affirmative misrepresentation, he has failed to put on any evidence that he actually relied on his contract with Sun Life before requesting a partial 1035 exchange. Instead, he only has put forth evidence that he relied on statements made to himself, or to his agent, regarding his Sun Life annuity.

Furthermore, Myatt has failed to identify a genuine dispute of material fact regarding the first element of his negligent misrepresentation claim. "Under Mississippi law, 'a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted.' Such a duty 'generally arises only where there is a fiduciary relationship between the parties.'" *Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 274-75 (5th Cir. 2008) (quoting *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007)). As a matter of law, "the purchase of insurance is deemed to be an arms length transaction, and accordingly no fiduciary duty arises." *Taylor*, 954 So. 2d at 1049-50; *see also Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 270 (Miss. 1999) (holding that insurer "had no duty to disclose its internal policies relating to enforcement"); *accord Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 403 (5th Cir. 2012) ("[I]mposing liability on agents for failing to advise . . . would remove any burden from the insured to take care of his or her own financial needs.").

There is no set of facts under which Myatt can establish the first element of negligent misrepresentation. Accordingly, summary judgment will be granted on that claim.

### C. Extra-contractual and Punitive Damages

"[I]n a breach-of-contract case, a plaintiff must prove that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1101 (Miss. 2011), *reh'g denied* (Feb. 2, 2012) (citations omitted); *see also Hurst v. Sw. Miss. Legal Serv. Corp.*, 708 So. 2d 1347, 1350 (Miss. 1998) ("Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort.").

There is no genuine dispute of material fact on Myatt's claim for extra-contractual and punitive damages. Myatt has not directed this Court to evidence indicating that Sun Life was anything other than negligent when it erroneously processed Myatt's request. Myatt argues that punitive damages are appropriate based on his misrepresentation claim, but that claim is no longer at issue and it cannot be considered in support of his claims for punitive damages. Sun Life is entitled to summary judgment on this claim.

### IV. Conclusion

For these reasons, Sun Life's motion is DENIED as to its affirmative defenses, GRANTED as to Myatt's claim of negligent misrepresentation, and GRANTED as to Myatt's request for extra-contractual and punitive damages.

**SO ORDERED**, this the 2nd day of November, 2012.

                                                s/ Carlton W. Reeves
                                                UNITED STATES DISTRICT JUDGE